IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CARLOS AGUILAR LARES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:25-cv-1562 (LMB/WBP) |
| | ) |
| PAMELA BONDI, et al., | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

Petitioner Carlos Aguilar Lares ("Aguilar"), a native and citizen of Guatemala, has filed a four-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since approximately June 23, 2025. Specifically, he alleges that the Laken Riley Act of 2025, which the federal respondents believe subjects Aguilar to mandatory detention, violates his substantive and procedural due process rights (Counts I and II, respectively). In the alternative, Aguilar alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act ("INA") (Count III) and his right to procedural due process (Count IV).

Aguilar is currently detained at the Caroline Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Center. Aguilar has also sued James A. Mullan, the Assistant Field Office Director of ICE's Washington Field Office; Todd M. Lyons, the Acting Director of ICE; Kristi Noem, the DHS Secretary; and Pamela Bondi, the Attorney General (collectively "the federal respondents"). For the reasons discussed in this Memorandum Opinion, this Court finds that

Aguilar is not detained pursuant to 8 U.S.C. § 1226(c)(1)(E) or 8 U.S.C. § 1225(b)(2) but is detained under 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted, and the respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

I.

A. <u>Statutory Scheme</u>

"Every day, immigration officials must determine whether to admit or remove the many aliens who have arrived at an official 'port of entry' . . . or who have been apprehended trying to enter the country at an unauthorized location." <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 285 (2018). Additionally, "immigration officials must . . . determine on a daily basis whether there are grounds for removing any of the aliens who are already present inside the country." <u>Id.</u> To enable immigration officials "to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final [removal] decision can be made," federal immigration law authorizes immigration officials to detain certain noncitizens during the pendency of their removal proceedings. <u>Id.</u> Specifically, § 1225(b)(1) and (b)(2) "authorize[] the Government to detain certain aliens seeking admission into the country," and § 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings." <u>Id.</u> at 289. In other words, "[t]here is a statutory distinction between noncitizens who are detained <u>upon arrival</u> into the United States and those who are detained after they have <u>already entered</u> the country, legally or otherwise." <u>Abreu v. Crawford</u>, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025).

---

[1] Because the Court is granting relief on due process grounds, it need not address Aguilar's claim for relief under the INA.

2

Section 1226 governs the detention of noncitizens "already present in the United States." Jennings, 583 U.S. at 303. Subsection (a) sets forth the "default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" Id. at 288 (quoting 8 U.S.C. § 1226(a)). Pending that removal decision, federal immigration officials—including DHS officers and Immigration Judges within the Executive Office of Immigration Review—have the discretion to detain the noncitizen, release the noncitizen on a bond of at least $1,500, or release the noncitizen on conditional parole. 8 U.S.C. § 1226(a); see Nielsen v. Preap, 586 U.S. 392, 397 (2019). DHS officers may release the noncitizen on bond or conditional parole if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); see Nielsen, 586 U.S. at 397. And if a noncitizen is unsuccessful in persuading a DHS official that he should be released during the pendency of his removal proceedings, he may request that an Immigration Judge revisit that decision through a bond hearing at any time before the issuance of a final order of removal. 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Subsection (c) departs from subsection (a)'s default rule and "mandates detention during removal proceedings for a limited class of deportable aliens" who are already present in the United States. Demore v. Kim, 538 U.S. 510, 517–18 (2003). As originally enacted, § 1226(c)(1) identified four categories of noncitizens who cannot be released on bond or conditional parole during the pendency of their removal proceedings. Nielson, 586 U.S. at 398. Any individual covered by § 1226(c)(1) "shall" be taken into immigration custody "when the alien is released [from criminal custody], without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1); see Nielson, 586 U.S. at 39

3

There are four categories of noncitizens for which the statute mandates detention. The first is any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) covers crimes involving moral turpitude, controlled substances, human trafficking, or money laundering. The second category covers any noncitizen who "is deportable by reason of having committed any offense in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." Id. § 1226(c)(1)(B). The relevant provisions in § 1227 list crimes of moral turpitude, aggravated felonies, offenses involving controlled substances, certain firearms offenses, espionage, sabotage, treason, or sedition. The third category covers any noncitizen who "is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year." Id. § 1226(c)(1)(C). Section 1227(a)(2)(A)(i) in turn provides that any noncitizen who has been convicted of a crime involving moral turpitude within a certain timeframe after being admitted into the United States is deportable. The last category applies to any noncitizen who "is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title." Id. § 1226(c)(1)(D). Section 1182(a)(3)(B) provides, in part, that any noncitizen who "has engaged in a terrorist activity," "is a member of a terrorist organization," "endorses or espouses terrorist activity," or "is the spouse or child of an alien who is inadmissible under this subparagraph" is inadmissible. Section 1227(a)(4)(B) adds that any noncitizen described under § 1182(a)(3) is deportable.

On January 29, 2025, President Trump signed into law the Laken Riley Act, which added a new subparagraph to § 1226(c) that makes detention mandatory for any noncitizen who:

> (i) is inadmissible under paragraph (6)(A); (6)(C); or (7) of § 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary,

4

theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E). The grounds for inadmissibility contained in § 1182(a)(6)(A), (a)(6)(C), and (a)(7) are "presen[ce] in the United States without being admitted or paroled"; "seek[ing] to procure . . . a visa, or other documentation or admission into the United States" by fraud or misrepresentation; and failure to possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter." Doe v. Moniz, 2025 WL 2576819, at *6 n.8 (D. Mass. Sept. 5, 2025).

Section 1226(c)(1)'s mandatory detention is not absolute. Section 1226(c)(4) provides that "an alien described in paragraph (1)" may be released "'only if the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk."[2] Jennings, 583 U.S. at 303 (quoting 8 U.S.C. § 1226(c)(4)). Moreover, "[a]nyone who believes that he is not covered by § 1226(c) may also ask for what is known as a 'Joseph hearing.'" Id. at 289 n.1 (citing Matter of Joseph, 22 I. & N. Dec. 799, 805 (1999)). At a Joseph hearing, the noncitizen "may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." Demore, 538 U.S. at 514 n.3.

Although § 1226 governs the detention of "aliens already in the country," § 1225 governs the detention of "aliens seeking admission into the country." Jennings, 583 U.S. at 289. As a starting point, § 1225(a) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an

---

[2] Before the Laken Riley Act amended 8 U.S.C. § 1226(c), subsection (c)(4) appeared at (c)(2).

applicant for admission." Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Jennings, 583 U.S. at 287. Section 1225(b)(1) applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," id. (citing 8 U.S.C. § 1225(b)(1)(A)(i)), as well as to other noncitizens who receive special designation by the Attorney General, 8 U.S.C. § 1225(b)(1)(A)(iii). Section 1225(b)(2) applies to all other applicants for admission. See Jennings, 583 U.S. at 287. Although applicants covered by § 1225(b)(1) and applicants covered by § 1225(b)(2) are detained pursuant to different processes, both provisions mandate the detention of noncitizens deemed to be applicants for admission.

Finally, although the federal respondents have correctly argued that detention pursuant to § 1225(b) or § 1226(c) is "not indefinite," [Dkt. No. 10] at 7, the exact length of detention is "impossible to predict and can be quite lengthy." Hernandez-Lara v. Lyons, 10 F.4th 19, 29 (1st Cir. 2021). Moreover, this Court places great weight on "the notion that freedom from unlawful restraint is a right so core to our understanding of liberty that suffering even one day of unlawful detention is a harm recognized by the Constitution." Hurd v. Fredenburgh, 984 F.3d 1075, 1085 n.4 (2d Cir. 2021).

B. Factual and Procedural Background

Aguilar, a native and citizen of Guatemala, entered the United States in 2005 and, before being detained, lived with his wife and three U.S. citizen children at their home in Virginia. [Dkt. No. 1] at ¶ 22. There is no evidence in the record before the Court that before February 18, 2025, Aguilar had been charged or convicted of any criminal offense; however, on that day, Aguilar was charged in the Henrico General District Court with nine counts of petit larceny pursuant to Virginia Code § 18.2-96 for conduct that allegedly occurred on December 18, 2024; December 19, 2024; December 24, 2024; January 2, 2025; January 26, 2025; January 28, 2025;

6

and February 2, 2025. [Dkt. No. 10-1] at 19–27. Additionally, on April 23, 2025, Aguilar was charged in the Chesterfield General District Court with two counts of petit larceny pursuant to Virginia Code § 18.2-96 for conduct that allegedly occurred on January 27, 2025, and February 5, 2025. Id. at 29–30. Both the Henrico General District Court and Chesterfield General District Court records demonstrate that Aguilar was released during the pendency of his criminal charges.[3] Id. at 19–30.

On June 23, 2025, after a hearing in the Chesterfield General District Court, Enforcement and Removal Operations officers "encountered Petitioner outside the Chesterfield County courthouse, and after establishing Petitioner's identification and determining Petitioner had no legal status in the United States, placed Petitioner in immigration custody at the Caroline Detention Center in Virginia pursuant to 8 U.S.C. § 1225(b)(2)(A) as an alien who is an applicant for admission because he is present in the United States without admission or parole."[4] Id. ¶ 8. The next day, DHS issued Aguilar a Notice to Appear, which charged him with being inadmissible to the United States, and thus subject to removal, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Id. ¶ 9. Shortly thereafter, Aguilar filed a Form EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. Id. ¶ 10. An Immigration Judge denied that application but granted Aguilar's alternative request for Post-Conclusion Voluntary Departure to allow him to leave the United States. Id. ¶ 14. An

---

[3] The Chesterfield General District Court records state that Aguilar was released on his own recognizance, [Dkt. No. 10-1] at 29–30, and the Henrico General District Court records reflect that Aguilar served no time in custody on those charges, id. at 19–27.

[4] Although in his declaration supporting the federal respondents' opposition, Supervisory Detention and Deportation Officer Justin Richardson indicated that Aguilar was "placed . . . in immigration custody . . . pursuant to 8 U.S.C. § 1225(b)(2)(A)," [Dkt. No. 10-1] at ¶ 8, the federal respondents argue that Aguilar is detained pursuant to 8 U.S.C. § 1226(c)(1)(E), [Dkt. No. 10] at 2.

7

appeal of the Immigration Judge's decision was filed on October 14, 2025, and the appeal is currently pending.[5]

Meanwhile, on July 15, 2025, an Immigration Judge found that Aguilar was not eligible for release on bond during the pendency of his removal proceedings because he was subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E) based on the criminal charges that had been filed against him. Id. ¶ 12. A few weeks later, on August 27, 2025, both charges in the Chesterfield General District Court were dismissed nolle prosequi, and on September 4, 2025, all nine charges in the Henrico General District Court were dismissed nolle prosequi.[6] Id. at 19–30. Accordingly, as of the date Aguilar filed his Petition, he had "no criminal charges pending." [Dkt. No. 1] at ¶ 3. Nonetheless, Aguilar remains detained at the Caroline Detention Center, and the record before this Court reflects that Aguilar has not been provided with a bond hearing before an Immigration Judge since the criminal charges against him were dismissed.

Aguilar filed the pending Petition for Writ of Habeas Corpus on September 18, 2025. [Dkt. No. 1]. The federal respondents have filed an opposition, [Dkt. No. 10], and Aguilar has filed a reply, [Dkt. No. 13]. On October 22, 2025, this civil action was randomly transferred from Judge Michael S. Nachmanoff to this Court, which ordered that Aguilar not be "removed or transferred from this district for any reason without this Court's permission." [Dkt. No. 14]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

---

[5] Automated Case Information, Exec. Off. of Immigr. Rev., https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 29, 2025).

[6] The Chesterfield General District Court and Henrico General District Court records reflect that Aguilar did not serve any time in custody on the criminal charges against him and appeared for all hearings. [Dkt. No. 10-1] at 19–30.

8

II.

The federal respondents first argue that § 1226(c)(1)(E) mandates Aguilar's detention while his removal proceedings are pending. Aguilar contests that position, arguing that the Laken Riley Act violates his due process rights guaranteed by the Fifth Amendment to the United States Constitution. This Court need not decide the constitutionality of § 1226(c)(1)(E) because it is clear from the text of the statute and the facts in this record that § 1226(c)(1)(E) does not apply to Aguilar's detention. See Crowell v. Benson, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

In relevant part, § 1226(c)(1)(E) provides that detention is mandatory for any noncitizen who is inadmissible under § 1182(a) and who "is charged with" or "is arrested for" one of the enumerated offenses, as relevant to this Petition, shoplifting. 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). This plain language makes clear that detention is not mandatory if the criminal charges have been dismissed. See Carr v. United States, 560 U.S. 438, 448 (2010) (explaining that courts "frequently look to Congress' choice of verb tense" in "ascertain[ing] a statute's temporal reach"). "Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person 'is charged with' that crime, present tense." Helbrum v. Williams Olson, 2025 WL 2840273, at *5 (S.D. Iowa Sept. 30, 2025). Rather, "[b]y using the present tense, § 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute." Id. Had Congress intended to make detention mandatory for anyone who was charged with larceny, it certainly knew how. See United States v. Atiyeh, 402 F.3d 354, 364 (3d Cir. 2005) ("Congress kn[ows] how to use the

9

past tense."); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 57 (1987) ("Congress could have phrased its requirement in language that looked to the past . . . but it did not choose this readily available option."). Because the charges against Aguilar have been dismissed, [Dkt. No. 10-1] at 19–30, they are no longer pending, and it is not accurate to say that he "is charged with" or "is arrested for" petit larceny. Therefore, § 1226(c)(1)(E) does not mandate that Aguilar be detained without having been afforded a bond hearing.

The federal respondents argue that even if the Laken Riley Act does not govern Aguilar's detention, § 1225(b)(2) does. [Dkt. No. 10] at 18. They maintain that whether an individual is detained under § 1225(b) or § 1226(a) lies in the "statutory distinction between aliens who are detained after a lawful admission into the United States and those who are present without a lawful admission." Id. According to the federal respondents, § 1226(a)'s discretionary detention provisions "only 'cover[s] individuals given legal status who are then subsequently placed in removal proceedings." Id. at 19 (quoting Olaya Rodriguez v. Bondi, 2025 WL 2490670, at *3 n.10 (E.D. Va. June 24, 2025)).[7] Therefore, they argue that because Aguilar has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id. at 19–20 (emphasis in original).

---

[7] The federal respondents' reliance on Olaya Rodriguez is misguided because, as this Court has previously explained, Olaya Rodriguez misinterpreted this Court's Memorandum Opinion in Rodriguez v. Perry, 747 F. Supp. 3d 911 (E.D. Va. 2024). Hasan v. Crawford, 2025 WL 2682255, at *6 (E.D. Va. Sept. 19, 2025). In Rodriguez, "this Court found that [the petitioner's] SIJ status meant that he was no longer an 'arriving alien' under § 1225(b)(2) but rather an 'alien present in the United States' and therefore subject to § 1226(a)," but Rodriguez "did not hold that § 1226(a) applies only to individuals with lawful status." Id.

10

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[8] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025).

This Court has previously addressed several of these points in Hasan v. Crawford, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025), and maintains and incorporates that reasoning into this Order. That same reasoning has been applied in multiple cases since this Court issued its memorandum opinion in Hasan, and where this Court has required that a petitioner be provided with a standard bond hearing pursuant to § 1226(a), the petitioner has been granted bond. Vargas Nunez v. Lyons et al., 1:25-cv-1574-LMB-WEF, Dkt. No. 12 (E.D. Va. Oct. 15, 2025)

---

[8] See, e.g., Gomes v. Hyde, 2025 WL 1869299 (D. Mass. July 7, 2025); Martinez v. Hyde, 2025 WL 2084238 (D. Mass. July 24, 2025); Lopez Benitez v. Francis, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); J.O.E. v. Bondi, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); Jacinto v. Trump, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); Samb v. Joyce, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Garcia Jimenez v. Kramer, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); Anicasio v. Kramer, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); Rosado v. Figueroa, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); Orellana Juarez v. Moniz, 2025 WL 1698600 (D. Mass. June 11, 2025); Hernandez Nieves v. Kaiser, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Carmona-Lorenzo v. Trump, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); Lopez-Campos v. Raycroft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

(released on his own recognizance); Diaz Gonzalez v. Lyons et al., 1:25-cv-1583-LMB-IDD, Dkt. No. 10 (E.D. Va. Oct. 15, 2025) (released on his own recognizance); Gomez Alonzo v. Simon et al., 1:25-cv-1587-LMB-LRV, Dkt. No. 20 (E.D. Va. Oct. 9, 2025) (released under bond of $1,500); Perez Bibiano v. Lyons et al., 1:25-cv-1590-LMB-WEF, Dkt. No. 10 (E.D. Va. Oct. 14, 2025) (released on his own recognizance); Guerra Leon v. Noem et al., 1:25-cv-1634, Dkt. No. 14 (E.D. Va. Oct. 22, 2025) (released on his own recognizance); see also Chaudhari v. Crawford et al., 1:25-cv-1772, Dkt. No. 14 (E.D. Va. Oct. 27, 2025) (releasing a petitioner from ICE custody after this Court determined that he had already been released on bond pursuant to § 1226(a)). Moreover, DHS has chosen not to appeal the Immigration Judges' bond decisions.

Because Aguilar has been present in the United States since 2005, and because § 1226(a) sets forth "the default rule" for detaining and removing aliens "already present in the United States," Jennings, 583 U.S. at 303, Aguilar's detention is governed by § 1226(a), not by § 1225(b)(2). And under § 1226(a) and its implementing regulations, Aguilar is entitled to a bond hearing before an Immigration Judge, in which the Immigration Judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless and until an Immigration Judge makes such a determination, Aguilar's continued detention is unlawful.

III.

For the reasons stated above, Aguilar's Petition [Dkt. No. 1] will be granted by an Order to be issued with this Memorandum Opinion, which will require the respondents promptly to release Aguilar from custody and provide him with a standard bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of the Order.

Entered this 29th day of October, 2025.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge